

UNITED STATES OF AMERICA
DALLAS TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 19 2020

CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES OF AMERICA
          Plaintiff

V.

BYRON KEITH RISER
          Defendant

Case No. 3:17-CR-00459-L (1)

3:17-cr-00459

MOTION FOR COMPASSIONATE RELEASE

The defendant Byron Riser petitions the court for resentencing to time served based on the criteria set forth by the First Step Act of 2019 Via compassionate release and the mechanism set forth under 18 USC 3582 (C)(1)(A).

The defendant requested compassionate release from Warden K. Zook at FCI Seagoville in TX on Apr. 7, 2020 and was denied relief on Apr. 22, 2020. This activated the next phase of the administrative remedy within the BOP with an ultimate goal of remedy or exhaustion. Due to the futile nature of these remedy results and a potentially fatal time frame set by the Covid-19 virus, Mr. Riser now asks the courts under the new precedent: US v. Sawicz 08-CR-287(CARR) (E.D.N.Y Apr. 10, 2020); where the court found: "Even where Administrative Exhaustion is seemingly mandated by statute or decisional law The requirement is not absolute", quoted from Washington v. Barr 925 F.3d 109 118 (2d cir 2019). This is allowed after "the lapse of 30 days from the reciept of such a request by the Warden of the defendant's facility, whichever is earlier".

The defendant suffers from the following conditions:
1. Coronery Artery Disease
2. Hypertension
3. Hyperlipidemia
4. Unstable Angina
5. Other needs Heart Surgeries



Case No. 3:17-CR-00459-L(1)

Due to extensive documentation via medical reports pages have been attached.

At 57 years of age Mr. Riser, having served 32 months of a 60 month sentence (53%) with a release date of Approx Jan., 2022 is seemingly being put at undue risk when his poor prognosis for these conditions makes him potentially more susceptable to the Covid-19 virus.

Mr. Riser is on disability due to his ill-health, has a safe house with a family to neither contract nor spread Covid-19 to release to for both quarantine and living (as suggested by the CDC and AG Barr), and Mr. Riser has safe private transportation for return to the defendant's home as well as medical insurance and income.

FCI Seagoville already has one case of Covid-19 although the general population has not been tested, and isolation is nearly if not impossible in the institution.

In summary Mr. Riser asks to forego the Administrative Remedy process to Exhaustion, although he believes he already has, by citing US v. Sawiez as a precedent to be heard by the court and to be released with time served as to not be subject to significant suffering or catastrophic health consequences. Also addressed in US v. Sawiez prison population "are subject to heightened vulnerability" as cited on Apr. 9, 2020 in Miller v. US: Crim Case No. 16-20222-1 (ED Mich Apr. 9, 2020). Where Miller was seen by the court due to his rights under 18 USC 3582(C)(1)(A)'s "Catch All" provision. All stated facts and conditions also meet the threshold set by the latest "order" set forth by AG Barr setting the standard for early release for inmates being held by the BOP and still the BOP seems

Case No. 3:17-CR-00459-L(1)

reluctant to act, it is because of these facts we ask the court to act in accordance with precedent.

I swear under penalty of perjury that the above is true to the best of my knowledge.

Byron Riser                              Date 5-13-2020

By signing this I also authorize your Honor to share any and all attached documents to any counsel of Byron Riser or any entity the court feels needed in order to help facilitate a final judgement in this manner

Byron Riser                              Date 5-13-2020

Also attached; proof of Disability, Medical Records, and BOR assessment of likelihood of Recidivism.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| **BYRON KEITH RISER** | Case Number: **3:17-CR-00459-L(1)** |
| | USM Number: **56250-177** |
| | **Courtney Griffin Stamper** |
| | Defendant's Attorney |

## THE DEFENDANT:

| | | |
|---|---|---|
| ☐ | pleaded guilty to count(s) | |
| ☒ | pleaded guilty to count(s) before a U.S. Magistrate Judge, which was accepted by the court. | **Count 2 of the Indictment filed September 12, 2017** |
| ☐ | pleaded nolo contendere to count(s) which was accepted by the court | |
| ☐ | was found guilty on count(s) after a plea of not guilty | |

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 21:841(a)(1) and (b)(1)(D ) Possession With Intent To Distribute A Controlled Substance | 07/13/2017 | 2 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s)

☒   Count(s) 1, 3, and 4 of the Indictment filed 9/12/2017   ☐ is   ☒ are dismissed on the motion of the United States

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**September 24, 2018**
Date of Imposition of Judgment

*Sam A. Lindsay*
Signature of Judge

**Sam A. Lindsay, United States District Judge**
Name and Title of Judge

**September 26, 2018**
Date

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

UNITED STATES OF AMERICA

v.

**BYRON KEITH RISER**

**JUDGMENT IN A CRIMINAL CASE**

Case Number: **3:17-CR-00459-L(1)**
USM Number: **56250-177**
**Courtney Griffin Stamper**
Defendant's Attorney

## THE DEFENDANT:

| | | |
|---|---|---|
| ☐ | pleaded guilty to count(s) | |
| ☒ | pleaded guilty to count(s) before a U.S. Magistrate Judge, which was accepted by the court. | **Count 2 of the Indictment filed September 12, 2017** |
| ☐ | pleaded nolo contendere to count(s) which was accepted by the court | |
| ☐ | was found guilty on count(s) after a plea of not guilty | |

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 21:841(a)(1) and (b)(1)(D) Possession With Intent To Distribute A Controlled Substance | 07/13/2017 | 2 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s)

☒  Count(s) 1, 3, and 4 of the Indictment filed 9/12/2017   ☐ is   ☒ are dismissed on the motion of the United States

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**September 24, 2018**
Date of Imposition of Judgment

Signature of Judge

**Sam A. Lindsay, United States District Judge**
Name and Title of Judge

**September 26, 2018**
Date

AO 245B (Rev. TXN 2/18) Judgment in a Criminal Case                                                    Judgment -- Page 2 of 8

DEFENDANT:          BYRON KEITH RISER
CASE NUMBER:        3:17-CR-00459-L(1)

# IMPRISONMENT

Pursuant to the Sentencing Reform Act of 1984, but taking the Guidelines as advisory pursuant to United States v. Booker, and considering the factors set forth in 18 U.S.C. Section 3553(a), the defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:   **Sixty (60) months as to Count 2.  This sentence shall run concurrently with any sentences imposed in Case Nos. F-1757561, F-1757562, and F-1757563 pending in Dallas County Criminal District Court 4, Dallas, Texas.**

☒     The court makes the following recommendations to the Bureau of Prisons:
       **The court recommends that Defendant be allowed to serve his sentence at FCI, Seagoville, or alternatively, a facility in the Dallas/Fort Worth, Texas area, if he is eligible.  The court also recommends that Defendant be allowed to participate in the Residential Drug Abuse Treatment Program, if he is eligible.**

☒     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district:

       ☐    at                                    ☐    a.m.    ☐    p.m.    on

       ☐    as notified by the United States Marshal.

☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

       ☐    before 2 p.m. on
       ☐    as notified by the United States Marshal.
       ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

       Defendant delivered on _____ to

at _____, with a certified copy of this judgment.

                                                          UNITED STATES MARSHAL

                                                                By
                                                          DEPUTY UNITED STATES MARSHAL

```
   SEAGG   606.00  *       MALE CUSTODY CLASSIFICATION FORM      *       04-02-2020
PAGE 001 OF 001                                                          14:59:51
                            (A) IDENTIFYING DATA
REG NO..: 56250-177               FORM DATE: 01-09-2020              ORG: SEA
NAME....: RISER, BYRON KEITH
                                         MGTV: NONE
PUB SFTY: NONE                           MVED:
                            (B) BASE SCORING
DETAINER: (0) NONE                 SEVERITY.......: (3) MODERATE
MOS REL.: 23                       CRIM HIST SCORE: (00) 0 POINTS
ESCAPES.: (0) NONE                 VIOLENCE.......: (0) NONE
VOL SURR: (0) N/A                  AGE CATEGORY...: (0) 55 AND OVER
EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                            (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%       PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD         TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE         FAMILY/COMMUN..: (4) GOOD


                     --- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE   SEC TOTAL   SCORED LEV MGMT SEC LEVEL   CUSTODY   CONSIDER
+3   +20    -4         0          MINIMUM       N/A            IN      DECREASE


G5149        INMATE/DESIG FACL LEVEL MISMATCHED, HAVE DSCC ADD A MGTV
G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```



# Dallas Medical Physician Group

**Riser FCI, Byron**

56 Y old Male, DOB: 09/14/1962
Account Number: 144072
1485 HERITAGE PKWY, MANSFIELD, TX-76063-2721
Home: 814-477-0400
Guarantor: Riser FCI, Byron   Insurance: INTEGRATED MED
SOLUTIONS Payer ID: 20050
PCP: Medical Solutions FCI-Integrated
Appointment Facility: SOUTHWEST CARDIAC ASSOCIATES

56250 - M

04/05/2019

**Progress Notes:** Luisa Gan, MD

*C. Galloway, HIT*
*FCI Seagoville*

## Current Medications

Taking
• Lisinopril 10 MG Tablet 1 tablet Orally Once a day
• Atorvastatin Calcium 40 MG Tablet 1 tablet Orally Once a day, Notes: Increased from atorvastatin 20 mg to 40 mg on 4/5/19
• Aspir-81 81 MG Tablet Delayed Release 1 tablet Orally Once a day
• Ticagrelor 90 MG Tablet 1 tablet Orally Twice a day
• Metoprolol Tartrate 50 MG Tablet 1 tablet with food Orally Twice a day
• Nitroglycerin 0.4 MG Tablet Sublingual as directed Sublingual
• Timolol Maleate 0.5 % Solution 1 drop into affected eye Ophthalmic Once a day
• Imdur 30 MG Tablet Extended Release 24 Hour 1 tablet in the morning Orally Once a day
Not-Taking
• Hydrochlorothiazide 25 MG Tablet 1 tablet in the morning Orally Once a day
• Medication List reviewed and reconciled with the patient

## Past Medical History

CAD (coronary artery disease).
Hypertension.
Hyperlipidemia.
CKD stage G3a/A1, GFR 45-59 and albumin creatinine ratio <30 mg/g.
Unstable angina.

## Surgical History

Cardiac Catheterization, Left x2 stent 1/02/2019
CABG X3 2011

## Family History

Father: alive
Mother: alive
4 brother(s) , 2 sister(s) . 2 son(s) .

## Social History

Tobacco Use:
Tobacco Use/Smoking  Are you a nonsmoker, Additional Findings: Tobacco Non-User  Tolerant non-smoker. Tobacco use other than smoking  Are you an other

## Reason for Appointment

1. abn chest x-ray

## History of Present Illness

HPI:
   Scribe Attestation I, Kimberly Martinez, attest that this documentation has been prepared in the presence of Dr. Luisa Gan and the documentation accurately describes the services performed on 4/5/19.
   56-year-old inmate with HTN, HLD, CAD s/p 4v-CABG in '10 and recent Impella-supported PCI to native RCA in December 2018, who is here for follow up from DRMC. He was hospitalized between 12/31/2018-1/4/2019 for recurrent chest pain and exertional shortness of breath. During that hospitalization, his chest pain was felt to be related to residual disease in the RCA outflow vessels and mid-LAD, which were not amenable to PCI, as such, medical management was favored. He is here today for followup. He admits to having exertional shortness of breath with ambulating ~50 yards. He has no chest discomfort. Dr. Gunukula did the procedure. Drs.Gunukula, Parr and Ong, interventional cardiologist reviewed the film and suggests continue medical therpy.
   Dr. Ong reviewed angiograms from recent hospitalization and PCI in 12/'18. Native LAD and LCx occluded. SVG-OM and RCA occluded. Native RCA stents placed but outflow vessels small and diffusely diseased. LIMA-LAD patent with TIMI-3 antegrade flow but a severe focal lesion in the mid-LAD that limits back-filling of a more proximal diagonal branch. PCI attempted to mid-LAD lesion as well but unable to wire retrograde wire.

## Vital Signs

BP LT arm sitting:129/96, HR 49 /min, Ht 5 ft 9 in, Wt 210 lbs, BMI 31.01 Index, Oxygen sat % 97 %, Ht-cm 175.26, Wt-kg 95.26 kg.

## Examination

Physical Examination:
   Constitutional: Patient appears well-developed, well-hydrated, well-nourished, and in no acute distress.
   HEENT: PERRL, EOMI. Normocephalic, atraumatic.
   Neck: No thyromegaly. Vein flat at 30 degree, good carotid upstroke, no bruits heard.
   Cardiovascular: Rate: Bradycardic. Rhythm: Regular. No murmur, gallop or click heard. S1, S2 normal.

tobacco user? No. Smoking status: Never used tobacco. Screening not performed Reason: No reason specified.

Drugs/Alcohol:
Drugs Have you used drugs other than those for medical reasons in the past 12 months? No No. Alcohol Screen Did you have a drink containing alcohol in the past year? No, Points 0, interpretation Negative. Alcohol Use: No. Drug use: Not using drugs.

Miscellaneous:
Caffeine: 1-2 cups per day.

Alcohol Use:
Do you drink alcoholic beverages: No.

## Allergies
N.K.D.A.

## Hospitalization/Major Diagnostic Procedure
Dallas Regional Medical Center 01/2/2019
Baylor Plano 2011

## Review of Systems
General/Constitutional:
    Fatigue Denies. Weight gain Denies. Weight loss Denies.
Eyes:
    Vision Changes Denies. Blurred Vision Denies. Cataracts Denies. Glaucoma Denies.
ENT:
    Tinnitus Denies. Decreased hearing Denies. Difficulty swallowing Denies.
Respiratory:
    Dyspnea admits (with ambulation of 50 yards). Snoring Denies. Shortness of Breath Denies. Cough Denies.
Cardiovascular:
    PND Denies. Chest pain at rest Denies. Chest pain with exertion Denies. Claudication Denies. Fluid accumulation in the legs Denies. Irregular heartbeat Denies. Orthopnea Denies. Palpitations Denies.
Genitourinary:
    Difficulty urinating Denies. Frequent urination Denies. Nocturia Denies. Burning with urination Denies.
Neurologic:
    Weakness Denies. Falls Denies. Slurred speech Denies. Near-syncope Denies. Syncope Denies. Lightheadedness Denies. Dropping things from hands Denies. Dizziness Denies. Headache Denies. Tingling/Numbness Denies.
All other systems are otherwise negative.

murmur, gallop or click heard. S1, S2 normal.
    Respiratory: Clear to auscultation bilaterally. No wheezes, rales or rhonchi heard.
    Abdomen: Soft, non-tender. Bowel sounds are present throughout.
    Skin: Skin is warm, dry and intact, without any rashes or bruising. Healed sternal incision
    Extremities: No pedal edema. Good peripheral pulses. Moves all extremities well.
    Neurological: Awake, alert and oriented x 3, answers questions appropriately, follows commands, M/S is intact throughout.

## Physical Examination
see above.

## Assessments
1. Hypertension - I10 (Primary)
2. CAD (coronary artery disease) - I25.10
3. Presence of aortocoronary bypass graft - Z95.1
4. S/P PTCA (percutaneous transluminal coronary angioplasty) - Z98.61

## Treatment
### 1. Hypertension
    IMAGING: EKG

### 2. Others
Increase Atorvastatin Calcium Tablet, 40 MG, 1 tablet, Orally, Once a day, 90 Days, 90 Tablet, Refills 3, Notes: increased from atorvastatin 20 mg to 40 mg on 4/5/19
Start Imdur Tablet Extended Release 24 Hour, 30 MG, 1 tablet in the morning, Orally, Once a day, 90 Days, 90 Tablet, Refills 3 Notes: Coronary Artery Disease: Care Instructions material was printed.
Clinical Notes: -Labs from DRMC on 1/1/19 reveal an LDL of 75, as such, I am increasing his atorvastatin to 40 mg for secondary prevention. Printed prescription was provided to the guards.
-Recommend repeat fasting lipid panel in 3 months' time.
-He denies having any chest pain at this time, but reports issues with exertional shortness of breath which could be anginal equivalent. At this time, I am starting him on Imdur ER 30 mg once daily for anti-anginal benefit. Printed prescription was provided to the guards.
-Consider decreasing metoprolol tartrate because of bradycardia.
-Continue aspirin and clopidogrel (per Dr. Merkin he does not think Brilinta is available at prison) given recent drug-eluting stents. Would continue clopidogrel lifelong.
-No plan for stress test, cardiac cath, or further cardiac testing at this time.
-He will return for follow up with me in 3 months.

## Procedures
1/1/19 Labs from DRMC: LDL 75, HDL 24.7, TRG 61, TC 112, D-Dimer 0.65
12/4/8 Cardiac cath: Native LAD and LCx occluded, SVC, OM and

12/16 Cardiac cath. Native LAD and LCx occluded. SVG-OM and RCA occluded. Native RCA stents placed but outflow vessels small and diffusely diseased. LIMA-LAD patent with TIMI-3 antegrade flow but a severe focal lesion in the mid-LAD that limits back-filling of a more proximal diagonal branch. PCI attempted to mid-LAD lesion as well but unable to wire retrograde wire.

**Preventive Medicine**
Counseling: BP Management  LIFESTYLE RECOMMENDATION: Hypertension education. Tobacco use: Patient not counseled: Patient not eligible. BMI Care goal follow-up plan: Above Normal BMI Follow-up  Dietary management education, guidance, and counseling.

**Procedure Codes**
93000 EKG, Complete

**Follow Up**
3 Months

Electronically signed by Luisa Gan , MD on 04/06/2019 at 02:29 PM CDT

Sign off status: Completed

---

SOUTHWEST CARDIAC ASSOCIATES
5308 N GALLOWAY AVE
STE 100
MESQUITE, TX 75150-1125
Tel: 972-226-0505
Fax: 855-852-7159

---

Patient: Riser FCI, Byron    DOB: 09/14/1962    Progress Note: Luisa Gan, MD    04/05/2019

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*



Office of Hearings Operations
Harwood Center
1999 Bryan St
Suite 2300
Dallas, TX 75201-9605

Date: October 23, 2019

Byron Riser
2113 North Highway 175
Federal Id # 56250177
Seagoville, TX 75159

## Notice of Decision – Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements for Supplemental Security Income payments. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals

Form HA-L76 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**



See Next Page

Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## What Else You May Send Us

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

## How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

## The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.

## When There Is No Appeals Council Review

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

## If You Have Any Questions

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are



Form HA-L76 (03-2010)

The claimant has past relevant work as the following:

| Job Title | DOT[11] | SVP[12] | Exertional Level per the DOT/as performed[13] |
|---|---|---|---|
| Tank cleaner | 891.687-022 | 3 | Heavy |

The claimant's past relevant work was performed within the last 15 years, lasted long enough for the claimant to learn how to perform the position, and was performed at substantial gainful activity levels (*see* SSR 82-62).

The demands of the claimant's past relevant work exceed the residual functional capacity discussed under Finding No.5. The vocational expert's testimony supports these findings.

**7.   The claimant was an individual of advanced age on the established disability onset date (20 CFR 404.1563 and 416.963).**

**8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).**

At the supplemental hearing held on October 3, 2019, the vocational expert testified that the claimant does not have transferable skills within the residual functional capacity discussed under Finding No.5.

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

Even if the claimant had the residual functional capacity for the full range of light work, a finding of "disabled" would be directed by Medical-Vocational Rule 202.06.

**11.   The claimant has been under a disability as defined in the Social Security Act since September 14, 2017, the amended alleged onset date of disability (20 CFR 404.1520(g) and 416.920(g)).**

---

[11] Dictionary of Occupational Titles.

[12] Specific Vocational Preparation.

[13] The exertional levels are sedentary (S), light (L), medium (M), heavy (H), and very heavy (VH).

Byron Riser (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)                                                                            Page 7 of 9

(Ex. 6F/52). Though, in the course of his most recent hospitalization, his complaints were attributed to residual disease in his right coronary artery and mid left anterior descending artery, revealed upon recent catherization and which has not been amenable to angioplasty or stent placement (Ex. 6F/49, 52). Noting his history of bypass surgery in 2011 with subsequent stent placement, the overall evidence is not inconsistent with complaints of fatigue and instances of shortness of breath upon exertion.

As for the claimant's impairment of obesity, he reported that he is 5 foot 9 inches tall and weighed 230 pounds on December 16, 2018 (Ex.6F/3).[9] This would give the claimant a Body Mass Index of 42.5, which is in the obese category for adults. Treating sources in the record also support a diagnosis of obesity (Ex.6F/3, 30). These reports, as well as the claimant's reports of his daily activities, support the diagnosis of obesity, and the undersigned finds that considering this obesity in combination with the claimant's other impairments, notably his cardiac impairments, reasonably limits him to a restricted range of light work, consistent with the above residual functional capacity under Finding No.5.

Turning to the opinion evidence, on June 15, 2017, State agency physician David L. Hicks, M.D. opined that the claimant could perform medium work activity (Ex.5A/6; Ex.7A/6).[10] The State agency physician did not examine the claimant and did not have an opportunity to consider additional evidence submitted at the hearing level (*see* Exhibits 2F-10F). Further, the undersigned considered the totality of the record, including the claimant's testimony at hearing. Thus, for these reasons, the undersigned gives Dr. Hicks' opinion only some weight.

In summary, considering the totality of the record, including treatment records, objective and clinical findings, as well as the claimant's statements, he is limited to a the residual functional capacity discussed above under Finding No.5. Thus, based upon this evidence and the record as a whole, the rules direct a finding of disabled in this case as of the established onset date of September 14, 2017

**6. The claimant is unable to perform his past relevant work (20 CFR 404.1565 and 416.965).**

---

[9] During the Consultative Examination performed on February 28, 2017, the claimant weight 216 pounds (Ex.1F/2; *see also* Ex.1E/2).

[10] The undersigned considered the State agency documents at the initial level, but due to limited evidence, the physician did not render an opinion at that time.



See Next Page

Byron Riser (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)                                                   Page 3 of 3

deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (855)531-1683. Its address is:

                    Social Security
                    2300 Dunson Dr
                    Balch Springs, TX 75180-4852


                                   Gal Lahat
                                   Administrative Law Judge


Enclosures:
Form HA-L15 (Fee Agreement Approval)
Decision Rationale


cc:     Andrew S. Youngman
        Citizen's Disability
        P.O. Box 549293
        Waltham, MA 02454



Form HA-L76 (03-2010)

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are reasonably consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Turning to the evidence, in order to garner additional insight into the claimant's impairments, the Agency sent him to a Consultative Examination (Ex.1F).[5] On February 28, 2017, the Consultative Examiner noted the claimant's history of coronary bypass surgery with quadruple bypass surgery (Ex.1F/2).[6] Further, the claimant reported continued symptomatology including constant fatigue upon exertion and continued problems with hypertension (Ex.1F/2). The Consultative Examiner reported that the claimant's exertional fatigue appeared to be consistent with his statements and was probably related to his significant cardiac history (Ex.1F/3). In addition to the cardiac impairment, the Consultative Examiner confirmed the diagnosis of hypertension (Ex.1F/3). This is also consistent with the claimant's testimony at hearing as well as the treatment notes (Ex.4F/23).[7]

Further, despite treatment, on December 16, 2018, the claimant was admitted to the hospital through December 22, 2018, due to recurrent episodes of substernal chest pain with associated shortness of breath (Ex.6F/2). The record reflect that the claimant was also admitted on December 31, 2018, through January 4, 2019, due to continued episodes of chest pain (Ex.7F/34).[8] Consistent with the claimant's testimony at hearing, he had reported to the doctor that he had taken a nitroglycerin tablet, without relief (Ex.8F/14).

The record reflects generally normal physical examinations with the claimant able to walk several laps around the track daily (Ex. 6F/11, 16). However, his EKG, performed on December 16, 2018, reflected ST depression resulting in a diagnosis of NSTEMI (non-ST elevated myocardial infarction) as well as acute angina (Ex. 6F/8). The claimant has also been assessed with non-cardiac chest pain, exhibiting a low normal left ventricular ejection fraction of 50%

---

[5] The record also contains requests for evidence for which the facilities reported that no additional information was available for the period requested (Ex.2F; Ex.3F; Ex.5F; Ex.9F; Ex.10F).

[6] *See* Ex.4F/3-4; Ex.6F/8, 30.

[7] Despite treatment, the claimant's blood pressure reading was elevated at 124 over 91 **millimetre of mercury** (mmHg), with the normal range of less than 120 over less than 80 mmHg (Ex.4F/27).

[8] Duplicate Ex.8F/14.



While there is not a specific Listing for hypertension, the Listing in 4.00(H)(1) notes that hypertension, because of its systemic nature, will be evaluated by reference to specific body systems affected under this Listing. The undersigned will also consider its impact when assessing the claimant's residual functional capacity. There is no evidence in the medical file of a specific body system so affected as to meet a Listing in the instant case.

Further, the undersigned referenced Listing 4.02 Chronic heart failure as considered by the State agency physician at Ex.5A and Ex.7A. However, though the claimant's cardiac impairment is severe, this impairment does not rise to the level required by the Listing. For instance, the record does not support evidence of systolic or diastolic failure with persistent symptoms limiting ability to independently initial, sustain, or complete activities of daily living.[3] Further, the record does not support three or more separate episodes of congestive heart failure within a consecutive 12-month period or inability to perform an exercise tolerance test. Thus, the claimant's cardiac impairment does not rise to the level required by the Listing.

For these reasons, the claimant's impairments do not meet or equal a Listing. The undersigned further considered the impact of her impairments on her residual functional capacity under Finding No.5.

**5.   The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations: The claimant is capable of performing work that involves lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sitting up to 6 hours out of an 8-hour workday, and standing and/or walking up to 6 hours in an 8-hour workday. He is further capable of performing work that involves only occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling, but no climbing of ladders, ropes, or scaffolds.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p.[4] The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

---

[3] At hearing, the claimant testified that he has limitations, but is able to take care of his own personal hygiene and needs.

[4] Under SSR 16-3p, these factors include the type, dosage, effectiveness, and side effects of any medication and treatment for relief of pain or other symptoms. They also include the location, duration, frequency and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; measures other than treatment for relief pain or other symptoms; daily activities; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.



See Next Page

The claimant has not performed substantial gainful work activity since the established onset date of September 14, 2017 (*see* Ex.21D Certified Earning Report). Thus, the analysis proceeds to Step 2.

**3.   The claimant has the following severe impairments: history of coronary bypass surgery with quadruple bypass, hypertension, and obesity (20 CFR 404.1520(c) and 416.920(c)).**

A severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." The undersigned finds that the above impairments cause more than a minimal effect on the claimant's ability to perform basic work activities and, as such, they are severe.

Further, when there is no specific evidence that a condition significantly interferes with a claimant's ability to engage in basic work activities, it is considered not "severe" within the meaning of 20 CFR 404.1520(c) and 20 CFR 416.920(c), as applied by Social Security Rulings 85-28 and 96-3p. Under these rulings, an impairment is considered to be nonsevere only if the medical evidence establishes a slight abnormality, or a combination of slight abnormalities, which would not impact the individual's ability to work.

In this matter, the evidence of record shows the claimant was diagnosed with hyperlipidemia (Ex.1F/3). However, the claimant has not received consistent treatment for this impairment. Moreover, the evidence does not show persistent symptoms or more than minimal limitations. Accordingly, this impairment is nonsevere.

Pursuant to SSR 96-8p, the undersigned considered all of the claimant's impairments, including the non-severe impairment described above, in determining her residual functional capacity (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945).

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

Although the claimant has severe impairments, these impairments do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). No treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairments, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairments of the Listing of Impairment. In this matter, the undersigned considered Listing 4.00 Cardiovascular system.

Furthermore, pursuant to SSR 19-2p, obesity is no longer a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, however the claimant's obesity was considered in relation to the musculoskeletal, respiratory, and cardiovascular body systems Listings as required by the Ruling.



severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b) and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512, 404.1560(c), 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.    The claimant's date last insured is December 31, 2020.[2]**

**2.    The claimant has not engaged in substantial gainful activity since September 14, 2017, the amended onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

---

[2] *See* Ex.21D Certified Earnings Report.



of impairments that can be expected to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an
additional issue whether the insured status requirements of sections 216(i) and 223 of the Social
Security Act are met. The claimant's earnings record shows that the claimant has acquired
sufficient quarters of coverage to remain insured through December 31, 2020. Thus, the claimant
must establish disability on or before that date in order to be entitled to a period of disability and
disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been
disabled from September 14, 2017, through the date of this decision. The undersigned also finds
that the insured status requirements of the Social Security Act were met as of the date disability
is established.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has
established a five-step sequential evaluation process for determining whether an individual is
disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is
determined that the claimant is or is not disabled at a step of the evaluation process, the
evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial
gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is
defined as work activity that is both substantial and gainful. If an individual engages in SGA, he
is not disabled regardless of how severe his physical or mental impairments are and regardless of
his age, education, or work experience. If the individual is not engaging in SGA, the analysis
proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable
impairment that is "severe" or a combination of impairments that is "severe" (20 CFR
404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within
the meaning of the regulations if it significantly limits an individual's ability to perform basic
work activities. An impairment or combination of impairments is "not severe" when medical and
other evidence establish only a slight abnormality or a combination of slight abnormalities that
would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522
and 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a
severe medically determinable impairment or combination of impairments, he is not disabled. If
the claimant has a severe impairment or combination of impairments, the analysis proceeds to
the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination
of impairments is of a severity to meet or medically equal the criteria of an impairment listed in
20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d),
416.925, and 416.926). If the claimant's impairment or combination of impairments is of a



See Next Page

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

### DECISION

**IN THE CASE OF**

Byron Riser
(Claimant)

_____
(Wage Earner)

**CLAIM FOR**

Period of Disability, Disability Insurance
Benefits, and Supplemental Security Income

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
(Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned on a request for hearing dated June 29, 2017 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*).

A hearing was held in this matter on November 5, 2018 (Ex.14B). At that time, the undersigned took testimony from the claimant, but the hearing could not be concluded due to the substantial amount of outstanding records. Once the additional evidence was obtained, a supplemental hearing was needed and held on October 3, 2019, in Dallas, TX. At the supplemental hearing held on October 3, 2019, Thomas R. Irons, an impartial vocational expert, appeared to provide testimony.

Andrew S. Youngman, a non-attorney representative, represents the claimant, as the principal representative, and Curtis Graves an attorney who attended the hearing as the co-representative (Ex.27B). At the hearing held on October 3, 2019, attorney Graves stated that he had no objections to the record and that at that time, to the best of his knowledge, the record was complete (20 CFR 404.935(a), 416.1435(a)).[1] Due to his incarceration, the claimant was not present at the hearing held on October 3, 2019, but since his representative appeared, the hearing proceeded.

The claimant has amended his onset date to September 14, 2017, which is consistent with the totality of the record for the reasons discussed herein (*see* Ex.24D). Therefore, this decision issues with no need for further testimony from the claimant.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination

---

[1] At the initial hearing, Exhibits 1F through 3F were admitted. Exhibits 1F through 10F have now been admitted into the record without objection raised by the representative at the supplemental hearing.



See Next Page

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on June 23, 2016, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since September 14, 2017.

Based on the application for supplemental security income filed on June 23, 2016, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act since September 14, 2017.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

/s/ *Gal Lahat*

Gal Lahat
Administrative Law Judge

October 23, 2019

Date



CMS–500 (2/16)

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS)

# MEDICARE PREMIUM BILL

DATE: 03/27/2020

YOUR MEDICARE NUMBER: 3MM7F54HF52

**Ways to pay your bill**
- Pay online at your bank's website
- Sign up for Medicare Easy Pay
- Make a check or money order payable to "CMS Medicare Insurance"
- Use Visa, MasterCard, American Express, or Discover

Send payment with the coupon at the bottom to:
**Medicare Premium Collection Center**
**P.O. Box 790355**
**St. Louis, MO 63179-0355**

F3582-DEB-0559869-T03982 *********ALL FOR AADC 752
BYRON RISER
4434 VANDERVORT DR
DALLAS TX 75216-4956

| | Coverage Periods | Part A (Hospital Insurance) + | Part B (Medical Insurance) + | IRMAA Part D = | Total Amount |
|---|---|---|---|---|---|
| Amount due for Part A and/or Part B | | | | | |
| Past due amount for Part A and/or Part B 03/01/2020-05/31/2020 | | | $433.80 | | $433.80 |
| Amount due for IRMAA Part D | | | | | |
| Past due amount for IRMAA Part D | | | | | |

| | |
|---|---|
| Part A termination date: | |
| Part B termination date: | Total amount due: $433.80 |
| Part D termination date: | Payment in full due by: 04/25/2020 |

**Please send your full payment by** 04/25/2020 **. Your payment is late if Medicare gets it after this date. If your bill says "Delinquent" at the top, you must pay your bill in full by this date, or you could lose your coverage and you may not be able to get your coverage back right away. Partial payment may not stop you from losing your coverage.**

Your bill shows new amounts and past amounts we didn't get by your last bill's due date.

We got your last payment of _____ on _____.

D0559869

**See other side for important information, including who to contact if you have questions.**

▼ **Don't send notes or letters with your payment. Cut at dotted line and return bottom with payment.** ▼

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

☐ Check here if your name or address has changed or is wrong, and complete the back of this paper.

☐ Check here if the person has died.

BYRON RISER
4434 VANDERVORT DR
DALLAS TX 75216-4956

Amount you are paying: $ ☐ ☐ ☐ , ☐ ☐ ☐ . ☐ ☐

Medicare Number: 3MM7F54HF52

**Write your Medicare number on your check or money order.**

Amount due: $433.80    Due in full by: 04/25/2020

Visa/MasterCard/American Express/Discover Number:

☐☐☐☐ - ☐☐☐☐ - ☐☐☐☐ - ☐☐☐☐

Expiration Date: (MM/YYYY) ☐☐ - ☐☐

Credit/Debit Card Billing ZIP Code: ☐☐☐☐☐

Signature: _____

Don't send cash. **Make check/money order payable to: CMS Medicare Insurance**

Send payment to:

MEDICARE PREMIUM COLLECTION CENTER
P.O. BOX 790355
ST. LOUIS, MO 63179-0355

(over)

452828492147462321474  4  332434  0043380  105

CMS–500 (2/16)

U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS)

# MEDICARE PREMIUM BILL

DATE: 03/27/2020

YOUR MEDICARE NUMBER: 3MM7F54HF52

**Ways to pay your bill**
- Pay online at your bank's website
- Sign up for Medicare Easy Pay
- Make a check or money order payable to "CMS Medicare Insurance"
- Use Visa, MasterCard, American Express, or Discover

Send payment with the coupon at the bottom to:
**Medicare Premium Collection Center**
**P.O. Box 790355**
**St. Louis, MO 63179-0355**

F3582-DEB-0559869-T03982 ********ALL FOR AADC 752
BYRON RISER
4434 VANDERVORT DR
DALLAS TX 75216-4956

| | Coverage Periods | Part A (Hospital Insurance) | + | Part B (Medical Insurance) | + | IRMAA Part D | = | Total Amount |
|---|---|---|---|---|---|---|---|---|
| Amount due for Part A and/or Part B | | | | | | | | |
| Past due amount for Part A and/or Part B | 03/01/2020-05/31/2020 | | | $433.80 | | | | $433.80 |
| Amount due for IRMAA Part D | | | | | | | | |
| Past due amount for IRMAA Part D | | | | | | | | |

| | |
|---|---|
| Part A termination date: | |
| Part B termination date: | Total amount due: $433.80 |
| Part D termination date: | Payment in full due by: 04/25/2020 |

**Please send your full payment by** ___04/25/2020___. Your payment is late if Medicare gets it after this date. If your bill says "Delinquent" at the top, you must pay your bill in full by this date, or you could lose your coverage and you may not be able to get your coverage back right away. **Partial payment may not stop you from losing your coverage.**

Your bill shows new amounts and past amounts we didn't get by your last bill's due date.

We got your last payment of _____ on _____.

0559869

**See other side for important information, including who to contact if you have questions.**

▼ **Don't send notes or letters with your payment. Cut at dotted line and return bottom with payment.** ▼

-----------------------------------------------------------------------------------------------------------

BYRON RISER
4434 VANDERVORT DR
DALLAS TX 75216-4956

Amount you are paying: $ ☐☐☐☐ . ☐☐

Visa/MasterCard/American Express/Discover Number:
☐☐☐☐ - ☐☐☐☐ - ☐☐☐☐ - ☐☐☐☐

Expiration Date: (MM/YYYY) ☐☐ - ☐☐☐☐

Credit/Debit Card Billing ZIP Code: ☐☐☐☐☐

Signature: _____

☐ Check here if your name or address has changed or is wrong, and complete the back of this paper.

☐ Check here if the person has died.

Medicare Number: 3MM7F54HF52

**Write your Medicare number on your check or money order.**

Amount due: $433.80   Due in full by: 04/25/2020

Don't send cash. **Make check/money order payable to:**
**CMS Medicare Insurance**

Send payment to:

MEDICARE PREMIUM COLLECTION CENTER
P.O. BOX 790355
ST. LOUIS, MO 63179-0355

(over)

452828492147462321474433 332434 0043380 105

**To pay your bill online –** Contact your bank for information on how to sign up for their Online Bill Pay Service and pay your premium. If not from an account, for information on paying your bill, visit Medicare.gov, or call 1-800-MEDICARE (1-800-633-4227). Teletypewriter (TTY) users should call 1-877-486-2048.

**If you use Medicare Easy Pay to pay your premiums,** and the box on the front in the upper right says "This is not a bill," your premium payment will be deducted from your bank account around the 20th of the month. Keep this statement for your records. By signing up for Medicare Easy Pay, you can have your Medicare premiums automatically deducted from your checking or savings account each month. For information on how to sign up, visit **Medicare.gov**, or call 1-800-MEDICARE.

**Payments by check or money order –** Make a check or money order payable to "CMS Medicare Insurance." When you pay by check, you authorize the Medicare Premium Collection Center (MPCC) to use the information from your check to make a one-time electronic funds transfer from your bank account or to process the payment as a check transaction. Your bank statement will show the transaction as "CMS Medicare."

**Payments by credit/debit card –** Credit/debit card payments need a signature. Fill out the credit/debit card section in the coupon on the front of the bill and sign it. Medicare can't set up automatic monthly credit/debit card payments.

- **If you have questions about your Part A or Part B bill amount or Part A or Part B insurance,** call Social Security at 1-800-772-1213, or write or visit any Social Security office. TTY users should call 1-800-325-0778.
- **If you have questions about your IRMAA Part D bill amount,** call 1-800-MEDICARE (1-800-633-4227). TTY users should call 1-877-486-2048.
- **If you need help paying your Medicare costs,** call or visit your State Medical Assistance (Medicaid) office, and ask for information on Medicare Savings Programs. You can also contact your State Health Insurance Assistance Program (SHIP). To get the phone numbers for your state, visit **Medicare.gov/contacts**, or call 1-800-MEDICARE.
- **For more information about this bill,** visit Medicare.gov and type "CMS-500" in the Search box.
- **CMS doesn't discriminate in its programs and activities.** To request this publication in an alternate format, please call 1-800-MEDICARE or email AltFormatRequest@cms.hhs.gov. TTY users should call 1-877-486-2048.

**What if I don't pay my Part A or Part B premium?** You'll lose your coverage, and you must still pay the total premium amount you owe. You can only reapply for Medicare during the General Enrollment Period from January 1 through March 31 each year. If you reapply, your coverage will start on July 1 of that year, and you may have to pay a higher monthly premium amount for Part A as well as a lifetime late enrollment penalty for Part B.

**What's IRMAA & why do I pay for it?** This bill may include an Income-Related Monthly Adjustment Amount (IRMAA). IRMAA is an extra amount you must pay for Part B and Part D coverage because you have a higher income. If you have IRMAA Part D, you're billed monthly and it's included in this bill. Your Part D plan premium is different, and you must pay the plan premiums to your Medicare drug plan. If you have IRMAA for Part B, it's included in your Part B premium amount. Your IRMAA can change each year. For more information about IRMAA, visit **socialsecurity.gov**.

**What if I don't pay my IRMAA Part D amount?** You'll lose your Part D coverage, even if it's part of your Medicare Advantage plan (like an HMO or PPO) or employer coverage. If you sign-up for Part D later, you'll still have to pay any IRMAA for Part D you owe, and you may have to pay a monthly penalty for as long as you have Part D coverage.

**IF YOUR NAME OR ADDRESS HAS CHANGED (OR IS DIFFERENT FROM THE NAME OR ADDRESS SHOWN ON THE FRONT OF THIS BILL), PRINT THE CORRECT INFORMATION BELOW:**

Last Name / First Name / MI

Street Number / Street Name

P.O. Box / Apartment Number

City / State / Zip Code

Byron K. FCI Seagoville
P.O. 9000
Seagoville, Tx 75159

  

RECEIVED
MAY 19 2020
MAILROOM

U.S. Court Clerk
Northern District (Dallas)
1100 Commerce St.
Dallas, Tx 75242